OPINION
Douglas R. Freed appeals from a judgment of the Greene County Court of Common Pleas, Domestic Relations Division, which affirmed a magistrate's decision and order denying his request to reduce the amount of child support he owed his former spouse, Theresa Freed, and which ordered him to reimburse Theresa for daycare expenses she incurred as a result of Douglas not exercising his 1998 summer vacation.
Theresa and Douglas were married in 1986, and three children were born of the marriage, to wit: Andrew J. Freed, born January 10, 1989, Alexander T. Freed, born March 20, 1990, and Matthew D. Freed, born May 24, 1991. The parties were divorced on December 8, 1997, and at that time the parties entered into a shared parenting agreement. The agreement stated that the children would reside with Douglas every other weekend, from Friday to Monday, and during the alternate weeks the children would reside with him Monday through Wednesday. During the summer, the children were to reside with Douglas for twenty-eight consecutive days. The trial court ordered Douglas to pay $288.00 per month per child for support, for a total of $864 per month, based upon the parties' incomes and accounting for the shared parenting arrangement.
Theresa filed a motion for contempt on February 23, 1999 for Douglas' failure to pay his full child support obligation. Theresa also requested that she receive all three tax exemptions for 1998 due to Douglas' failure to pay child support as scheduled and that the trial court order Douglas to reimburse her for childcare expenses resulting from Douglas' failure to exercise his 1998 summer visitation. In response, Douglas filed a motion for a reduction in child support.
At a hearing on the motions on June 1, 1999, Theresa testified that she had left her full-time job to go to Battelle 
Battelle, where she worked an average of 32.5 hours as a "seasonal" employee. She stated that she had left her full-time employment, which had mandatory overtime, because her new job enabled her to be home when her children arrived from school. She anticipated her 1999 gross income at $33,000.
Theresa also testified that in November of 1998, Douglas had decreased his child support payments to $400 per month and that, as a result, she had to obtain a bank loan to meet her expenses. Furthermore, Theresa stated that Douglas had not exercised his 1998 summer visitation, and thus she had incurred additional daycare costs of $240.
Douglas testified that he had formed his company, Source Marketing Group ("SMG"), while he was married to Theresa. He stated that Theresa had been the Chief Financing Operator of SMG, and thus she had known that he was contemplating moving from his former employment at Dayton Freight to SMG at the time of the divorce. On cross-examination, Douglas admitted that he had been fired from Dayton Freight because he had been soliciting their customers. As a result, his income decreased from $47,000 in 1997, to $8,000 in 1998, with an expected income of approximately $25,000 in 1999. Douglas also admitted that he had been in arrears in his child support account. However, at some time between the filing of Theresa's motion in February of 1999 and the hearing in June of 1999, Douglas had obtained a line of credit at a bank and had paid the arrearage.
The magistrate filed his decision and order on June 29, 1999. He recommended that the trial court order Douglas to pay $240 to Theresa to reimburse her for the extra daycare expenses she incurred because Douglas had failed to exercise his summer visitation. The magistrate further found Douglas in contempt because, although he was current in his child support obligations, he had not paid the child support in a timely and regular fashion. The magistrate denied Douglas' request for child support modification because he found that Douglas had voluntarily left his job at Dayton Freight. The magistrate further found that it would be in the children's best interests to calculate child support at his previous income of $47,900, rather than his new income of $25,000.
Douglas filed objections to the magistrate's report on July 12, 1999. He objected to the magistrate's denial of a decrease in his child support payments, arguing again that he had experienced a decrease in income. He also contested the contempt finding because he had purged himself of the arrearage prior to the hearing, and he contested the order to reimburse Theresa for daycare expenses she incurred for his failure to exercise his summer visitation.
On September 24, 1999, the trial court overruled Douglas' objections to the magistrate's decision and order.Douglas now appeals the trial court's judgment entry, and asserts two assignments of error for our review.
 I.
The trial court's decision was against the manifest weight of the evidence in finding that the Defendant's child support should not be reduced.
Douglas maintains that the trial court should not have imputed his prior income for purposes of calculating his child support obligation because there was no evidence at trial that he was voluntarily underemployed and to do so was "unduly burdensome." Furthermore, because Theresa was CFO of SMG, she had been aware that he was going to be leaving Dayton Freight to undertake the venture of starting SMG. Douglas relies on the decision in Badovick v. Badovick (1998), 128 Ohio App.3d 18, as support for his contention that he was not voluntarily underemployed.
Under R.C. 3113.215(A)(1)(b), an unemployed or underemployed parent's income includes his gross income and any potential income. Potential income of such parent includes the following:
 Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides.
R.C. 3113.215(A)(5)(a). In Rock v. Cabral (1993), 67 Ohio St.3d 108, syllabus, the Ohio Supreme Court stated:
 Whether a parent is "voluntarily underemployed" within the meaning of R.C. 3113.215(A)(5), and the amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion.
Furthermore, this court stated in Key v. Key (Oct. 23, 1998), Montgomery App. No. 16993, unreported, that the trial court may consider a parent's voluntary underemployment as a change in circumstances sufficient to support a reduction in his child support obligation if it determines that the "obligor's choice to voluntarily become underemployed is reasonable and made in good faith with no intent to frustrate the child support order."Id. citing Martin v. Custer (Sept. 29, 1993), Darke App. No. 1317, unreported. See, also, Woloch v. Foster (1994), 98 Ohio App.3d 806,811. However, the trial court's primary consideration is the welfare of the child. Rock v. Cabral, supra; Koogler v. Koogler (July 18, 1997), Montgomery App. No. 16253, unreported.
In this case, the magistrate made the following findings and conclusions:
 As to the Defendant, the Magistrate finds that he is employed and earns approximately $25,000 per year. He pays local taxes of $562.50 per year and self-employment taxes of $1,400.00 per year. The Magistrate finds that this income is from his self-employment with Source Marketing Group and that he voluntarily left a job with Dayton Freight where he was earning approximately $47,900.00 per year. The Magistrate finds that it is not in the best interests of the children to calculate child support based upon the Defendant's voluntarily reduced income. Therefore, it is the recommendation of the Magistrate that the Court DENY the request for modification of child support and leave the child support figure as it was previously Ordered * * *.
In its decision overruling Douglas' objections to the magistrate's decision, the trial court stated:
 The Defendant testified that his employment with Dayton Freight was terminated because he solicited their clients for his own company. By his admitted misconduct, the Defendant voluntarily lowered his income. A voluntary reduction in income, though it might amount to a substantial change in circumstances, is not justification for a reduction in support payments.
 Badovich v. Badovich {sic} does not apply in this case. The Defendant in Badovich {sic} lost his job due to his employer's business decisions and financial misconduct. The termination had nothing to do with Mr. Badovich's {sic} actions. The situation was totally involuntary. Mr. Freed knowingly pursued a course of action that resulted in his dismissal and caused a Twenty-five Thousand Dollar ($25,000.00) pay reduction.
 The Miami Valley area has many employment opportunities available in sales and marketing but the Defendant failed to present evidence to prove that he had tried to obtain another comparable paying position after his termination. This was not the case in Badovich {sic}. Mr. Badovich's {sic} salary had peaked with his former employer. He had zealously sought new employment but due to the longevity of his former position, he could not find anything that paid an equivalent salary.
 No evidence was submitted to prove that Mr. Freed had even looked for additional work to supplement his income and provide for his children until he became fully employed within the scope of his own business. His recent work history strongly suggest that he is more than capable of earning twice the income that he currently has coming in. The Defendant's objection is OVERRULED.
(Footnotes omitted.)
In our opinion, the trial court acted well within its discretion in concluding that Douglas had not acted reasonably or in good faith. Douglas testified that he was fired from Dayton Freight because he had been soliciting its customers for his own business. Because of this, Douglas was forced to leave his job of $47,900, and go into business for himself through SMG, where he expected to gross $25,000 in 1999. Thus, we will not disturb the trial court's decision to impute his prior income from Dayton Freight for purposes of calculating child support.
Douglas' assignment of error is overruled.
 II.
The trial court's decision was against the manifest weight of the evidence in awarding the Plaintiff additional day care expenses for the parties' minor children.
Douglas argues error in the trial court's order for him to pay $240 for Theresa's additional daycare expenses incurred because of his failure to exercise his 1998 summer visitation. In particular, Douglas finds error in the magistrate having "made up his mind prior to the hearing" that Douglas would be found responsible for the $240.
The magistrate made the following recommendations:
 The Magistrate finds that the Defendant is entitled to 28 days of summer visitation and that he did not utilize that summer visitation in the summer of 1998. The Plaintiff incurred additional daycare costs that she would not have had if the Defendant had exercised his summer visitation, and those costs were $240.00. The Magistrate finds that the Defendant should be made responsible for these extra daycare costs that Plaintiff would not have incurred. Therefore, it is the recommendation of the Magistrate that the Court ORDER the Defendant to pay the sum of $240.00 to the Plaintiff within 90 days of the date of this Decision.
 The trial court accepted the magistrate's recommendations, and simply noted that Theresa had incurred the additional daycare expenses when Douglas "failed to honor the terms of the shared parenting agreement."
We find no abuse of discretion by the trial court in its determination that Douglas be held responsible for reimbursing Theresa for the daycare expenses incurred by her for the time he failed to exercise his visitation. In fact, as Theresa pointed out in her brief, paragraph 4.1 of the parties' shared parenting agreement states, "The father shall be solely responsible for the payment of childcare expenses during the children's period of residence with him." Because the children were to be residing with him during his allotted summer visitation, he was to be solely responsible for the payment of childcare expenses during that time. Accordingly, we find no error on behalf of the trial court.
Douglas' second assignment of error is overruled.
The judgment of the trial court is affirmed.
 _______________________________ FREDERICK N. YOUNG, J.
GRADY, P.J. and FAIN, J., concur.